CULLEN, Respondent, v. INSURANCE COMPANY OF NORTH AMERICA, Appellant.

St. Louis Court of Appeals, June 25, 1907.

1. **INSURANCE: Proofs of Loss: Waiver: Denial of Liability.** Where the adjuster of an insurance company, after a loss, within the time provided in the policy for presenting proofs of loss, declared to the insured that unless he would accept a certain sum in payment of the goods totally destroyed, no adjustment would be made and if the insured was not satisfied with that he could proceed to sue, this was a waiver on the part of the insurance company of its right to demand proofs of loss.

2. **————: Arbitration: Estoppel.** Where the adjuster of an insurance company after a loss stated to the insured that unless he would accept a certain sum in payment for the property totally destroyed, the loss would not be adjusted and the insured could either accept the terms or sue, and the insured brought suit upon his policy for the loss, the insurance company was estopped to set up in defense that the plaintiff did not comply with the arbitration clause in the policy.

3. **————: Evidence: Offer of Compromise.** Where the agent of an insurance company, after the commencement of a suit on a policy to recover a loss covered by the policy, made an offer to pay a specific sum in settlement of the loss, this was an attempt at compromise and was inadmissible in evidence; it was not admissible for the purpose of showing a waiver of proofs of loss because made after suit was instituted.

Appeal from Audrain Circuit Court.—*Hon. Jas. D. Barnett,* Judge.

REVERSED AND REMANDED.

*Chas. B. Obermeyer* and *George Robertson* for appellant.

(1) It has been repeatedly held in this State that any negotiations leading up to the execution of a written contract, or anything which passes in the way of communication or talk between the parties thereto be-

fore the execution of such contract, is presumed to have entered into the written contract, and evidence of such negotiations or conversations preceding the execution of the contract is not admissible. In considering an instruction which stated that at the time of and prior to issuing the policy of insurance in suit, defendant's agent talked the terms of the policy over with plaintiffs, and then gave plaintiff to understand that certain conditions and terms of the policy would be waived, the Kansas City Court of Appeals has recently said: "This instruction is a clear violation of one of the plainest and most beneficial rules of law, viz., that all prior and contemporaneous agreements are included in the written agreement." Gillum & Company v. Fire Association, 106 Mo. App. Rep., p. 677; Ins. Co. v. Newberger, 74 Mo. 167; Helm v. Railroad, 98 Mo. App. 419; Catterlin v. Lusk, 98 Mo. App. 182; Ins. Co. v. Buchalter, 83 Mo. App. 504; Ijams v. Life Assn., 185 Mo. 466; Sowers v. Ins. Co. (Iowa), 85 N. W. 763. (2) "A waiver is an intentional relinquishment of a known right." Thomas v. Ins. Co., 47 L. R. A., 454; Findeisen v. Ins. Co., 10 Am. and Eng. Corp. Cases, 534-5. (Vt.). "A waiver, to be effectual, must be intentional." Moore v. Ins. Co., 13 Am. St. Rep. 557, 62 N. H. 20. The company must have intended to waive. Allen v. Insurance Co., 64 N. W., 17. Findeisen v. Ins. Co., 10 Am. and Eng. Corp. Cases, 535. A waiver can only be had which embraces the element of estoppel. Leigh v. Ins. Co., 37 Mo. App. 540; Underwood v. Ins. Co., 57 N. Y. 506; Everett v. Ins. Co., 21 Atl. 820; Cohn v. Ins. Co., 62 Mo. App. 275; Bolan v. Ins. Co., 58 Mo. App. 230; Hanna v. Co., 36 Mo. App. 539; Dautel v. Insurance Co., 65 Mo. App. 48; Watts v. Insurance Co., 87 Mo. App. 87. The insured must have been misled to his prejudice. Munier v. Insurance Co., 64 Ark. 593. That immediate notice of loss is a condition precedent and must be complied with, see Trask v. Insurance Co., 29 Pa. St. 198, 3 Ins. L. J. 534.

*Barclay & Fauntleroy* and *P. H. Cullen* for respondent.

(1) Where the statements, acts and conduct of the insurance company amount to a denial of all liability, proofs of loss are not required. Seigle v. Insurance Co., 107 Mo. App. 456; Vining v. Insurance Co., 89 Mo. App. 311; Insurance Co. v. Center, 31 S. W. 446; Armstrong v. Insurance Co., 130 N. Y. 557; Insurance Co. v. Harvey, 5 S. E. 556; Loeb v. Am. Central, 99 Mo. 50; Seigle v. Lumber Co., 106 Mo. App. 112. (2) The defendant having denied all liability in the answer, the pleading of such a defense rendered it unnecessary for plaintiff to prove that proofs of loss had been furnished. Insurance Co. v. Hilderbrand, 74 N. W. 584; Insurance Co. v. Simmons, 69 N. W. 125; Insurance Co. v. Chew, 38 N. E. McDonald v. Insurance Co., 154 Mo. 626; Lewis v. Western Association Co., 26 Ins. L. J. 498; Insurance Co. v. Monroe, 39 S. W. (Ky.) 434; Traub v. Insurance Co., 30 Atl. 904; Bant v. Insurance Co., 109 App. 660. (3) Where arbitration is demanded it is a waiver of proofs of loss, and where an answer pleads a failure to arbitrate it impliedly admits proofs of loss. Dee & Son v. Insurance Co., 104 Iowa 173, 73 N. W. 594; Bramgan v. Insurance Co., 102 Mo. App. 70; Insurance Co. v. Bean (Neb.), 60 N. W. 907; Murphy v. Insurance Co., 70 Mo. App. 78; Phillips v. Insurance Co., 14 Mo. 236; Erwin v. Insurance Co., 24 Mo. App. 153. (4) It is the duty of the insurance company to hunt out the account and make an honest effort to agree as to the amount of loss or damage. An unreasonable arbitrary offer of an insignificant sum complied with the statement, "take this or you get nothing" is not sufficient to bring the arbitration clause into operation. Hickison v. Insurance Co., 25 Ins. L. J. 424; Schrepper v. Insurance Co., 79 N. W. (Minn.) 291; Boyle & Son v. Insurance Co., 24 Ins. L. J. 699; Bodger v. Insurance Co.,

53 Wis. 286; Farnum v. Insurance Co., 83 Cal. 246, 23 Pac. 869; Vanginderoelin v. Insurance Co., 82 Wis. 112.

NORTONI, J.—The suit is on a policy of insurance against loss or damage by fire. S. J. Rosenthal is the insured in the policy sued upon. After loss and prior to the institution of this suit, he assigned the policy to the plaintiff for value, and the suit is prosecuted by Mr. Cullen as the party in interest under this assignment. The view which the court entertains of the case will render it unnecessary to notice all of the many question presented in the briefs. Two of those questions only will be discussed. The record is extended and so much of the material facts as are relevant to those two questions only will be set out.

The insured, Rosenthal, owned a retail store at 2137 Franklin avenue in the city of St. Louis, in which was contained a stock of gents furnishings, shoes, etc., said to be of the value at the time of the fire, of from thirteen to fourteen thousand dollars. On April 1, 1905, the defendant insurance company issued to the plaintiff the policy sued upon for one thousand dollars covering on stock for one year from that date, whereby it undertook to indemnify him for any loss or damage by fire during the period mentioned. There were ten other policies of one thousand dollars each, covering on the same stock. On May 9, 1905, a loss occurred. Some of the goods were totally destroyed and others greatly damaged by fire and water thrown thereon by the fire department. Rosenthal employed Mr. Mangson, an independent adjuster, to look after his interest in settling the loss with the several companies involved. No settlement was reached, however, inasmuch as the negotiations seem to have terminated unpleasantly. Rosenthal and his witnesses say that the defendant's adjuster became unreasonable and arbitrarily demanded he agree to accept one hundred dollars for his goods totally destroyed, and if he would not agree to this, no further

negotiations looking to an amicable settlement would be entertained by the defendant company; he could proceed to sue, etc.; that the adjuster abused him, etc., and because Mr. Mangson, his personal adjuster, failed to combat the company's adjuster in this onslaught, he thereupon discharged Mr. Mangson, took the policies out of his hands and employed counsel to commence this suit.

The policy sued upon contains the usual clause requiring the insured to render proof of loss to the company within sixty days after the fire and also the usual stipulation with respect to arbitration in event the parties fail to agree upon the amount of loss sustained. Two of the principal defenses relied upon in the defendant's answer, are the alleged failure of the insured to comply with either of these provisions of the policy. The proposition advanced and relied upon by the plaintiff to escape these stipulations in the policy and sustain the action, is that the company, by the acts and conduct of its adjuster, Mr. Crandall, waived both of these provisions. Therefore this matter and the facts relied upon as tending to prove such waiver, will be first considered. Notice of the loss having been duly received by the defendant, Mr. Crandall, its adjusting agent, and two other adjusters, Whittimore and Mattison, for other companies interested, as well as Mr. Mangson, the adjuster for Rosenthal, met at the store on the morning of May 19, to examine and negotiate with respect to a settlement. As said before, some of the goods were totally destroyed, others were damaged. The adjusters looked over the store, and Mr. Crandall, for defendant, inquired of Rosenthal what he estimated his loss to be on such goods as were totally destroyed; that is, such goods referred to in the evidence as being "entirely out of sight." Rosenthal answered he could not say, but from what he saw and his clerks said, he thought the amount of the goods totally destroyed

amounted to something between two and four thousand dollars; whereupon Mr. Crandall answered in substance that such a statement was absurd, that there was not over five dollars worth of goods totally destroyed. Whereupon, according to the evidence of Mr. Rosenthal and his several clerks who were present, Mr. Crandall said Rosenthal was a fraud, a scoundrel and a liar, to which Rosenthal answered; "You do not know me, you have no right to call me that. I have been in St. Louis all my life and my reputation stands good and you have no right to call me those names." Crandall insisted that he would not give five dollars for the entire loss on goods totally destroyed and that before he would take up the loss at all on the goods damaged, they must first reach an agreement with respect to those totally destroyed and "out of sight." Rosenthal said: "I told him it is unreasonable. Gentlemen, you can see from the pile of burned stuff what I say is reasonable. Why, just a couple of shirts would be worth five dollars." Whereupon he said Crandall told him that unless he fixed on the amount he was willing to accept for the totally destroyed goods first, and fix that amount "damned low, too," they would decline to proceed in the adjustment. "And they wouldn't take up my loss unless I agreed the totally destroyed goods was five dollars. Afterwards I got excited. They went back to the corner of the store and had a consultation among themselves. They came back and told me, 'Rosenthal, we have decided to give you one hundred dollars for the total lost goods, and if you refuse to accept that, we won't give you anything. You can go ahead and do whatever you please.'" Rosenthal and his adjuster, Mr. Mangson, suggested that they, together with Crandall and the others, go over the matter and make up a list of such goods as were totally destroyed. Mr. Crandall and the other adjusters declined to participate in this, and said: "We don't settle losses

126 App—27

of that kind.  We don't settle without going to litigation losses of that kind unless we have to, and in this case, if you don't want to do it, go ahead and do whatever you please.  Go ahead and do what you want; we will see you don't get your money in four or five years."  Mr. Crandall said: "Go ahead, you can't bluff us.  It will take you years before you can get a dollar out of it" and further, the unless Rosenthal agreed first, to accept one hundred dollars for the goods totally destroyed and "out of sight," they would quit the matter right there and he could proceed to sue on the policies or do as he pleased, they would see he did not get the money for several years.  The defendant's adjuster having thus arbitrarily asserted that unless Rosenthal would agree first to accept one hundred dollars for his goods totally destroyed, no adjustment would be made and he could sue on the policy and the company would see he did not get his money for several years, Mr. Rosenthal very properly placed the matter in the hands of his attorney.  This having occurred within the time for furnishing proofs, we entertain no doubt upon the proposition that such conduct on the part of the adjuster, if true, and the jury found it to be so on conflicting evidence, amounted in law to a waiver of the provision of the policy requiring the insured to furnish proofs of loss within sixty days after the fire.  It is well settled that a denial of liability on the policy or any act or conduct on the part of the insurer making it apparent that the furnishing of proofs would be an unnecessary and nugatory formality, amounts to a waiver thereof.  The principle of law involved is said to be, that need not be done which it appears from the position assumed by the insurer, will be unnecessary. [Phoenix Ins. Co. v. Center, 31 S. W. (Tex.) 446; Siegle & Son v. Phoenix Ins. Co., 107 Mo. App. 456, 81 S. W. 637; Vining v. Franklin Ins. Co., 89 Mo. App. 311; Siegle & Son v. Badger Lum-

ber Co., 106 Mo. App. 110, 80 S. W. 4; 13 Amer. and Eng. Ency. Law (2 Ed.), 345; 2 May on Insurance (4 Ed.), sec. 469; Ostrander on Insurance (2 Ed.), secs. 223, 352.] While what was said by the adjuster here may not have been a denial of liability in express terms and may not have been precisely tantamount to that in law, it was certainly sufficient to bring the case within the influence of the principle referred to and involved in the doctrine mentioned, when considered with reference to the purpose of the provisions of the policy with respect to such proofs. Now such provision must be interpreted as reasonable in itself and rational in its application. Under this rule it is obvious the purpose of the stipulation with respect to proofs of loss is to inform the insurer of the amount and character of the loss to the end the same may be ascertained, determined and settled without controversy between the parties. If such provisions are not reasonable and rational, they are indeed without force and effect in the law, and when we so view the matter, giving due attention to the purpose and object sought to be attained by the stipulation, under the influence of the principle of law above referred to, it is obvious that it would avail nothing to require proofs of loss to be made and furnished if the insurer did not intend to and would not liquidate the loss without suit, even though the proofs were furnished, unless the insured first agreed to accept one hundred dollars for such goods as were totally destroyed. Under the circumstances mentioned, the proofs could serve no purpose whatever within the rationale of the stipulation, if the insured did not intend to settle without suit, unless Rosenthal would accept one hundred dollars for the goods "out of sight." The Texas court has expressed the thought by saying, in substance, that when the insurer affixes a condition not provided for in the contract and declares that no settlement will be made unless such condition is complied with, such an

act renders it entirely unnecessary for the insured to render such proofs when it is obvious they will avail nothing against the condition affixed by the insurer unless the insured surrenders entirely to such demand. [Phoenix Ins. Co. v. Center, 31 S. W. (Tex.) 446.]

2. As to the clause pertaining to arbitration and appraisal in case of disagreement, this is a reasonable provision of the policy which operates only after the parties have negotiated and failed to reach an agreement on the amount of the loss. Upon such a state of facts, it operates as a condition precedent to plaintiff's right of recovery. [Stevens v. Norwich Ins. Co., 120 Mo. App. 88, 96 S. W. 684.] Now while the facts in proof show the parties failed to agree as to the amount of the loss on goods totally destroyed, it is made to appear as well that no effort was made in good faith by the adjusters to ascertain the amount of the loss. The company arbitrarily assumed the position through its adjuster, that unless the insured would agree in advance to accept one hundred dollars for totally destroyed goods, no effort would be made to ascertain and adjust the matter whatever, and the insured was given the alternative to either accept the terms so arbitrarily fixed or resort to suit at law on the policy. The purpose and object of the stipulation for arbitration is to the end that the parties may determine the amount of the loss without resort to the courts and the matter must be viewed with this thought in mind. Under the principle with respect to the waiver of proofs of loss above referred to, if it be apparent from the conduct of the adjuster that an arbitration would serve no end if had, then none was required; or in other words, by assuming a position which would render such act nugatory and of no effect, the company ought, under some of the authorities, be deemed to have waived its right thereto, for, as a general rule, the law does not require the doing of a useless act. The insured, by the arbitrary conduct of the com-

pany, was given to understand that if he did not agree to accept one hundred dollars for totally destroyed goods, no further steps would be taken by the company in the matter and he would be forced to suit. Under such circumstances, what good purpose would an arbitration serve? Its office is to avoid the expense and trouble entailed in litigation and here the insured was in effect instructed unless he would agree to what he deemed a most unreasonable requirement, he would be compelled to appeal to the courts, whether he arbitrated or not. Of course this did not amount to a denial of liability. If it did, it would operate a waiver of the provision under the well-settled law. [Vining v. Insurance Co., 89 Mo. App. 311.] But whether the facts are such as disclose a waiver or not, there can be no question about its operating an estoppel against defendant from invoking the arbitration provision mentioned, after the insured has gone to the expense and trouble of suit, as suggested by the adjuster. [Smith v. Grand Lodge A. O. U. W., 124 Mo. App. 181, 101 S. W. 662.] At any rate, under all of the authorities with which we are familiar, the operation of the arbitration clause in such policies is always deferred until the company has, in good faith, made a reasonable effort to agree with the insured on the amount of the loss; otherwise it would serve as a trap and a snare for the innocent and unwary. [Boule's Sons v. Hamburg-Breman Ins. Co. (Pa.), 24 Ins. Law Journal, 699; Vangindertaelen v. Phoenix Ins. Co., 82 Wis. 112; Phoenix Ins. Co. v. Badger, 53 Wis. 283; Farnum v. Phoenix Ins. Co., 83 Calif. 246; Schrepfer v. Rockford Ins. Co. (Minn.), 79 N. W. 1005; Hickerson v. German-American Ins. Co. (Tenn.), 25 Ins. Law Journal, 422.] Certainly an arbitrary declaration on the part of the company that unless the insured would agree to accept one hundred dollars in full for the goods totally destroyed, no further attention would be given the loss, and that he might appeal to the courts for relief,

does not evince a reasonable effort in good faith on its part to ascertain the amount of the loss so as to invoke the operation of the clause referred to. On the evidence, the court properly referred this question to the jury.

3.    The proof shows that Rosenthal assigned his policy to the plaintiff, Mr. Cullen, who is an attorney at law, in consideration of the services rendered and to be rendered by him and other counsel in prosecuting the suit, and while Mr. Cullen is the proper party plaintiff to the action, Rosenthal still retains an interest in the insurance after compensating his counsel for their services. It appears Rosenthal and the adjuster, Crandall, had a meeting at the house of Mr. Loewenstein, a mutual friend, in August, after the assignment of the policy to Mr. Cullen, and a few days after suit was instituted thereon. The purpose of this meeting was to settle the loss if an agreement could be reached, and of course in this, Mr. Rosenthal was acting in his own behalf and as agent for the plaintiff, his assignee. After some discussion as to the amount and character of the loss, Crandall made some figures on a paper and offered to pay Rosenthal $2,074.98 in full on account of the policy in suit and the four other policies of one thousand dollars each in other companies, all of which Mr. Crandall represented, which offer was declined. This evidence was introduced by plaintiff on the theory that it tended to show an admission of liability in consequence, of course, of its prior waiver of proofs of loss, arbitration, etc. It was objected to by the defendant as incompetent for the reason it was a proposition of compromise. The court admitted it, however, notwithstanding this objection, over the defendant's exception. It seems clear the court erred in its ruling on this question. From a careful reading of the proof and consideration of the circumstances under which the proposition was made, there is no doubt that it was a proposition to compromise the claim of the plaintiff which he asserted was much in ex-

cess of the amount then offered, and for that reason inadmissible. The law favors compromises and seeks to afford parties full opportunity and free latitude in that behalf by rendering them secure under the principle relevant to privileged communications. In making propositions and counter-propositions of that nature, one ought to be secure in his efforts to buy peace and that a man may offer to do so without prejudice to his right, is well settled, and the courts should hesitate, indeed, to infringe upon the wholesome principle involved. [Fink v. Lancashire Ins. Co., 60 Mo. App. 670; Maddox v. German Ins. Co., 39 Mo. App. 198; Cook v. Continental Ins. Co., 70 Mo. App. 610; Smith v. Shell, 82 Mo. 215; Leigh v. Springfield Fire Ins. Co., 37 Mo. App. 542.] We have given due attention to the authorities cited by plaintiff on this proposition and are persuaded that none of them go to the extent here sought to be invoked.

Now in certain cases where, although proofs of loss are required to be furnished within a specified time and default thereabout has been made by the insured and the company nevertheless does some act thereafter recognizing liability on account of the loss, it may be and no doubt is competent and proper as tending to support the theory of waiver of such proofs, to show that the company did some act recognizing liability after the time for proofs had expired. [Ostrander on Insurance, sec. 352.] For in such cases, if no proofs were furnished within the time, the right of the insured to recover is foreclosed thereby unless the proofs were waived and by showing the fact that liability had been recognized by the company thereafter when none could exist except in event of waiver theretofore had, the reasonable inference is that in recognizing liability, the company admits or recognizes as well a waiver of the proofs. Or in other words, by recognizing liability under such circumstances, the company necessarily recognizes the only fact by which liability can exist, and that is, the fact that it

had in some manner waived performance on the part of the insured of this condition precedent to its liability. However that may be, it is clear beyond peradventure that the doctrine referred to is without influence on the facts now in judgment. The proposition of compromise in this action took place after suit was instituted. It is unnecessary to give the opinion of the court as to whether or not the proposition to pay the insured a one-fifth part of $2,074.98 on account of the policy in suit, would be admissible as a recognition of liability within the doctrine mentioned had it occurred after the time for proofs had expired, and before suit was instituted, for the reason the record presents no such case. The rule with respect to the exclusion of a proposition of compromise is salutary and just. It found its origin in a high conception of public policy and tends to promote the peace and repose of society by encouraging free and frank communication between parties in attempting to adjust differences without resort to the courts, and therefore men avail themselves of the opportunity afforded thereby with the knowledge that what is said and done to that end shall be treated as privileged insofar as the courts are concerned and not employed to their prejudice in subsequent litigation respecting which an ineffectual attempt to compromise has been made. It appears therefore, even when the act relied upon as a recognition of liability occurred before suit, to be a grave question as to how far the doctrine sought to be invoked here may be extended and not do violence to the established rule with respect to compromise propositions. It is certain no general rule on the subject can be formulated to meet the exigencies of cases that may arise. In every instance the proposition would need to be determined by reference to the peculiar facts and circumstances on which it rested. We entertain no doubt, however, that if the facts pertaining to the offer of settle-

ment, even though before suit, were communications to effect a compromise, as appears in this record after suit instituted, the evidence would be adjudged incompetent, notwithstanding the great latitude and frequent apparent deviations from principle permitted by the courts in insurance cases. The proposition made by Crandall to Rosenthal, however, was made after suit. It is true learned counsel for plaintiff say, in order to escape this fact, that there is nothing in the record showing when the suit was instituted. There are no file marks apparent, but a careful reading of the entire record discloses by actual count on six separate pages, that the meeting of these parties took place at Loewenstein's house and this offer was made in August, after suit was instituted. There is no question in the world about this on the record, and it is abundantly settled that the acts of the insurer relied upon to show a waiver must have taken place before suit was instituted. It is an established rule of procedure that plaintiff must recover upon the state of facts existing at the time when he brings his action. [Leigh v. Insurance Co., 37 Mo. 542; 2 May on Insurance (4 Ed.,), sec. 469c; Smith v. Insurance Co., 64 Ia. 716.] Upon filing his petition, plaintiff certainly cannot predicate his suit upon a waiver alleged to have taken place theretofore, and on the trial, support this allegation by proof of an act showing a waiver subsequent to the institution of the suit. Now the actual amount of the loss was at least one, if not the principal, issue in the case, and under those circumstances, the fact that plaintiff was permitted to show the defendant offered on this occasion to pay him one-fifth of $2,074.-98 on this policy, was indeed error which materially affected the merits of the case and for which the judgment should be reversed. The judgment is reversed and the cause remanded. It is so ordered. *Bland, P. J.,* and *Goode, J.,* concur.