Joseph J. SCHULTZ and Ruby Mae Schultz, Plaintiffs-Respondents,

v.

QUEEN INSURANCE COMPANY and American Central Insurance Company, Defendants-Appellants.

No. 31637.

St. Louis Court of Appeals.

Missouri.

Dec. 21, 1965.

Rehearing Denied Jan. 19, 1966.

Application to Transfer Denied March 14, 1966.

Jerome M. McLaughlin, of Willson, Cunningham & McClellan, St. Louis, for appellants.

W. W. Sleater, III, St. Louis, for respondents.

CLEMENS, Commissioner.

This is an appeal from a $3,525 judgment for plaintiffs on two fire and windstorm insurance policies. The case now presents only the appeal of the defendants-insurers. (Initially, the plaintiffs appealed from the trial court's denial of their claim for penalties for vexatious delay, but we dismissed that appeal, No. 31,636, for plaintiffs' failure to file a brief. Civil Rules 83.06 and 83.09, V.A.M.R.)

The issues raised here concern plaintiffs' failure to make a formal proof of loss, their duty to comply with conditions of the poli-

cy as to inspection and appraisal, and the propriety of plaintiffs' verdict-directing and damage instructions.

The plaintiffs are husband and wife and own the damaged realty by the entirety. Each defendant issued a $3,000 fire insurance policy with extended coverage, including damage by windstorm. Plaintiffs pleaded $3,011.25 windstorm damage to the property, compliance with the policy provisions, and defendants' refusal to pay. The defendants' answer admitted only that the policies had been in effect, denied all other allegations, and pleaded failure to comply with conditions of the policy. At the close of plaintiffs' evidence, the defendants moved for a directed verdict; and that being denied, they declined to offer evidence. Verdict and judgment were against each defendant for $1,500 principal and $262.50 interest.

■ The issues raised require us to consider the evidence favorably to the plaintiffs. Mrazek v. Terminal R. R. Assn. of St. Louis, 341 Mo. 1054, 111 S.W.2d 26 [1]; Quigley v. St. Louis Public Service Co., Mo., 201 S.W.2d 169[1]; 3 Mo.Dig. Appeal and Error ■■■■ (Hereafter we will refer to plaintiff Joseph J. Schultz as plaintiff, in the singular.) Plaintiffs owned an old two-story brick dwelling, divided into one first-floor and two second-floor apartments. Only the former was occupied. On the night of February 9–10, 1959, a heavy windstorm struck the neighborhood. Later that morning, plaintiff, who was in the business of repairing, inspecting and appraising buildings, sent an employee, Joe Page, to inspect the building. Page did so and found that two windows had been blown inward and some roofing had been torn. Plaintiff estimated the damage at $171.42, and promptly prepared two detailed estimates and mailed them to the defendants. Then, on either the 11th, 12th or 13th of February, plaintiff himself inspected the dwelling and discovered the damage was more extensive than Page had reported. He found that the front wall was cracked and buckled and had pulled loose from both the roof and the first-floor ceiling joists. Plaintiff feared a collapse of the roof and upper floor, and immediately began installing upright 4″ by 4″ braces on each floor of the house. Apparently, only the weight of the roof had been holding the damaged brick wall in place, for as plaintiff completed the bracing operation the wall fell outward. The next day, plaintiff obtained repair estimates from two other builders: one was for $2,546 for only part of the work, the other was for $3,140.65 for all the work. Plaintiff sent these bids to the defendants on February 15, 1959. For reasons not explained, plaintiff then proceeded to do the repair work himself, using some four or five of his own regular employees. On February 18, the defendants' adjuster, a Mr. Maxton, came to the building while plaintiff was proceeding with the repairs. Plaintiff explained the damage to Mr. Maxton, who said nothing about money except that he wasn't going to pay the amount he was asking or "anything like that." Then on February 20, plaintiff wrote both defendant companies, complaining of their failure to adjust the loss. Mr. Maxton again inspected the building on March 5, a short time before plaintiff had completed the repairs. Subsequently, at an undisclosed time, plaintiff had a telephone conversation with Mr. Maxton in which the amount of damage "was disputed."

Plaintiff further testified that the reasonable cost of the repair was $600 for materials, $2,200 to $2,400 for hired labor, and $300 as the "customary charge for overhead profits." He also testified that the "before and after" values of the property were $7,000 and $1,800, respectively.

At the close of plaintiffs' case, the defendants moved unsuccessfully for a directed verdict, and offered no evidence. Verdict, judgment and appeal duly followed.

Defendants now vigorously maintain they were entitled to a directed verdict for two

reasons. Their principal attack is aimed at the plaintiffs' admitted failure to file a proof of loss. The policies contain the standard requirements that the insureds give immediate written notice; that they protect the property from further damage; and "within sixty days * * * render to the company a proof of loss signed and sworn to by the insured, stating [details as to time, ownership, value, amount of loss, incumbrances, purpose of occupancy, etc.]." The policies further provided that no action shall be sustainable in any court unless all of the requirements thereof have been complied with.

In support of this ground for a directed verdict, the defendants cite three pertinent cases. In Sims v. State Ins. Co. of Hannibal (1870), 47 Mo. 54, by dictum the court said that where the policy so provides, the filing of a proof of loss "is a condition precedent to recovery." However, the justiciable issue in that case was the authority of the insured's agent to execute the proof of loss. In Leigh v. Springfield Fire & Marine Ins. Co. (1889), 37 Mo.App. 542, this court adhered to the dictum of the Sims case, supra, and held that the insurer had not waived the proof of loss. However, the case was not reversed outright, but was reversed and remanded. The defendants find stronger support in Burnham v. Royal Ins. Co. (1898), 75 Mo.App. 394. There, the insured neither gave immediate notice nor filed a proof of loss; and the court ruled that these were conditions precedent to recovery and affirmed the trial court's action in directing a verdict for the insurer.

A departure from such a harsh result first appeared in the landmark case of Dezell v. Fidelity & Casualty Co. (1903), 176 Mo. 253, 75 S.W. 1102(4). There, the Supreme Court, at 75 S.W. l. c. 1119, made a distinction between insurance policies providing that notice and proof of loss were conditions precedent and those declaring that failure to comply constituted a forfeiture. The court said: " * * * Where no forfeiture is prescribed in the contract,

the court should have regard to the consequence that results from the failure to give the notice as shown by the facts in the case, and, if it appears that the purpose for which the notice and proofs were required has really been accomplished, the plaintiffs should not be precluded. * * * " The distinction was next recognized in James v. United States Casualty Co. (1905), 113 Mo. App. 622, 88 S.W. 125[5], which held that the phrase in a policy saying "that a claim should not be valid" unless conditions were complied with, did not mean "that the policy would be forfeited for want of notice."

The departure from the old rule had become more marked by 1926. In the case of Malo v. Niagara Fire Ins. Co. of New York, Mo.App., 282 S.W. 78[1], the insured gave no written notice and filed no proof of loss, both required by the policy as a precedent to recovery at law. The court held such a condition precedent was not a forfeiture clause and, hence, did not bar recovery.

Then, in 1934, the present issue was squarely before this court in the case of Walker v. American Automobile Ins. Co., Mo.App., 70 S.W.2d 82 [1]. We followed the Dezell and Malo cases, supra, and ruled that the insurer's defense of lack of notice was conditioned upon its showing prejudice and damages, saying at l. c. 89:

" * * * The provision that the insurance is subject to the agreement to give notice falls far short of giving a right to defeat the insurance for failure to perform the agreement within the time specified for its performance, *without any showing of prejudice to the insurer thereby.* The provision means that the insurance is subject to the agreement construed as it ought to be construed, that is, *with a proper regard for the consequences of its breach.* [Citing cases.]" (Our emphasis.)

In St. Paul & Kansas City S. L. R. Co. v. United States Fidelity & Guaranty Co., 231 Mo.App. 613, 105 S.W.2d 14 [16], the court

said: "Moreover, there was no proof of actual prejudice. Prejudice is not to be presumed from mere delay in giving notice. The prejudice must be actual and must be shown to be actual. * * *"

For later cases applying these principles, see Schaeffer v. Northern Assur. Co., Mo. App., 179 S.W.2d 923 [7]; Dixon v. United States Fidelity & Guaranty Co., Mo.App., 155 S.W.2d 313 [1]; and Western Casualty & Surety Co. v. Coleman, 186 F.2d 40 [1], where Missouri cases were reviewed by the United States Court of Appeals, Eighth Circuit, and the trial court was sustained in its conclusions: " * * * (1) that, under Missouri law, the failure of an insured to give notice of an accident does not defeat recovery on the policy unless it expressly provides for a forfeiture; (2) that, in order to sustain the defense of delayed notice, an insurer must allege and prove that prejudice resulted from the delay; * * *."

Back to the evidence in this case, we see that the plaintiffs promptly, and in detail, notified both defendants of the damage initially discovered. Plaintiffs then began shoring up the dwelling, in accordance with the policy provision requiring them to protect the building from further damage, and they gave defendants written bids for repair of the newly discovered damage; whereupon defendants' adjuster examined the building but declined payment of plaintiffs' demand. Plaintiff then wrote defendants demanding payment. All this occurred during the sixty-day period for filing proof of loss. Plaintiffs' loss and damage was an open book to the defendants; they did not ask plaintiffs for further information or a formal proof of loss. (This would have been required if this had been a *fire* loss. Section 379.185 RSMo 1959, V.A.M.S.) Defendants first raised

this point in general terms in their answer, and then in their motion for a directed verdict. We need not decide whether defendants *waived* their right to insist upon the proof of loss, but pertinent cases are listed below.[1] Instead, we rule the issue as one of claimed forfeiture, for that would be the effect of granting defendants' motion for a directed verdict and of the judgment which would have followed.

█ The policies here contained no forfeiture clause, and there was neither pleading nor proof that defendants were prejudiced by plaintiffs' failure to file a formal proof of loss. The cases discussed above require us to uphold the trial court in denying defendants' motion for a directed verdict on this ground.

The defendants make a second claim of error in the denial of their motion for a directed verdict. Still relying on the conditions precedent clause of the policies, they claim plaintiffs may not recover because they proceeded to repair the damaged premises without notifying the defendants; that defendants were therefore deprived of their rights (1) to inspect the damaged property to determine the cause of loss and extent of damage, and (2) to invoke the appraisal procedures available under the policies. Assuming, arguendo, that plaintiffs did repair the property without giving notice, we find no clear relationship between the claimed lack of notice and the claimed result.

█ We may logically infer that plaintiffs' prompt repair of the dwelling did have some effect upon inspection and appraisal by the defendants, but the evidence does not show that plaintiffs' conduct did in fact prevent defendants from inspecting the building or appraising the damage. Additionally, we hold that the principles of forfeiture

---

1. Siegle v. Phoenix Ins. Co., 107 Mo. App. 456, 81 S.W. 637(1); Burgess v. Mercantile Town Mut. Ins. Co., 114 Mo. App. 169, 89 S.W. 568(1–3); Cullen v. Insurance Co. of North America, 126 Mo.App. 412, 104 S.W. 117(1–2); Loewenstein v. Queen Ins. Co., 227 Mo. 100, 127 S.W. 72(1–4); Campbell v. National Fire Ins. Co., Mo.App., 269 S.W. 645 [3–4]; Propst v. Capital Mut. Assn., 233 Mo.App. 612, 124 S.W.2d 515 [7–9]; Hughes v. Patriotic Ins. Co., Mo. App., 193 S.W.2d 958 [4–6].

and prejudice discussed above on the issue of plaintiffs' failure to file a proof of loss are equally applicable to these asserted defenses of inspection and appraisal. The defendants did not prove that they were in any way prejudiced by the alleged lack of inspection and absence of appraisal. There being no applicable forfeiture provision in the policy, the trial court was also correct in denying defendants' motion for a directed verdict on these asserted grounds.

Having ruled that plaintiffs were entitled to go to the jury, we now consider defendants' complaints of plaintiffs' instructions. Defendants level a three-pronged attack at Instruction No. 1, which directed a verdict for plaintiffs. So far as relevant to defendants' attack, it required the jury to find that plaintiffs owned the insured property; that it was damaged by windstorm; that this was reported to the defendants; and that defendants failed to pay their share of the damage, if any.

◼ Defendants first complain that this instruction failed to require the jury to find that plaintiffs filed a proof of loss. We have already ruled that this would be incumbent on plaintiffs only if defendants had proved they were prejudiced by plaintiffs' failure. Having shown no prejudice, the defendants may not foist this burden onto the plaintiffs. Next, the defendants say the instruction did not require a finding that plaintiffs owned the property. It did so specifically. Lastly, defendants claim the instruction assumed damage to the property, but we note that every mention of damage was hedged in by the phrase "if any." Each of the three complaints as to Instruction No. 1 is without merit.

◼ Instruction No. 2 presented the issue of damages. The first paragraph says:

"The Court instructs the jury, that if you find in favor of the plaintiffs under Instruction No. 1, then you shall assess their damages at the difference between the market value of the property herein involved, immediately before and immediately after such damages, if any, are sustained, * * *."

Defendants complain that there was no evidence of the market value of the property. Apparently, their complaint concerns the omission of the adjective "market," modifying the noun "value." Plaintiff was qualified as an expert on real estate values, and then was asked his opinion as to the "value" of the property before and after the windstorm. He answered that the "price" was $6,950 to $7,000 before the storm, and that it was "worth" $1,800 afterward. Defendants neither objected to the questions, moved to strike the answers, nor challenged the testimony on cross-examination. Although the correct measure of damage should be based on "reasonable market value," the quoted testimony, having come in without objection, was substantial evidence thereof. See Hildebrand v. Erickson, Mo. App., 242 S.W. 1014 [7]; and Thompson v. St. Louis-San Francisco R. Co., Mo.App., 268 S.W. 885 [2, 3]. In any event, this was not material error. Compare Black v. Highley, Mo.App., 382 S.W.2d 46 [3–5].

The last paragraph of the damage instruction was impliedly conditioned upon the jury's finding that plaintiffs had been damaged, and told the jury: "And you shall further award to the plaintiffs interest on the said damages at the rate of 6% per annum from March 10, 1960 [the date suit was filed]." The jury itself, not the court, calculated the interest.

◼◼ The defendants' complaint is that the damage instruction directed the jury to award interest if plaintiffs were damaged, instead of only permitting it to do so. The objection assumes that an allowance of interest was permissible and, thus, raises only the question of whether a verdict for plaintiffs for the amount of their loss entitled them to interest thereon as a matter of

**236**

right. Section 408.020 RSMo 1959, V.A.M.S., provides:

"Creditors shall be allowed to receive interest at the rate of six per cent per annum, when no other rate is agreed upon, for all moneys after they become due and payable, on written contracts, and on accounts after they become due and demand of payment is made; * * * ."

This statute applies to insurance policies generally (Brown, etc., v. Railway Passenger Assurance Co., 45 Mo. 221, l. c. 227; Keeton v. National Union, Mo.App., 182 S.W. 798[8]), and to property insurance in particular (Payne v. Bankers' & Shippers' Ins. Co. of New York, 229 Mo.App. 901, 77 S.W.2d 183[10]; Boenzle v. United States Fidelity & Guaranty Co., Mo.App., 258 S.W.2d 938[9]). The very point defendants now raise was denied on the strength of this statute in the case of Bamberge v. Supreme Tribe of Ben Hur, 159 Mo.App. 102, 139 S.W. 235 [1, 2], where this court said at l. c. 238:

" * * * Nor can we sustain the second assignment of error, to the effect that the court had committed error in peremptorily directing the jury to find interest if they found for plaintiff. We do not understand the cases referred to by the counsel for appellant sustain the proposition. When interest is asked for in the petition or pleadings and the law allows it, there is no error in the court directing the jury to include in their judgment the amount of the debt as well as interest. * * * "

We rule that both of defendants' objections to Instruction No. 2 are without merit.

In summary, we find that the trial court properly denied the defendants' motion for a directed verdict, and that the given instructions were not subject to the defendants' objections. These being the only points raised, the judgment should be affirmed.

PER CURIAM.

The foregoing opinion of CLEMENS, C., is adopted as the opinion of this court.

Accordingly, judgment is affirmed.

WOLFE, P. J., and ANDERSON and RUDDY, JJ., concur.