LOTTA A. VINING, Appellant, v. THE FRANKLIN
    FIRE INSURANCE COMPANY, OF PHILADEL-
    PHIA, Respondent.

St. Louis Court of Appeals, March 12, 1901.*

1. **Practice, Trial:** JURY: BILL OF EXCEPTIONS.   The refusal of
   a jury must have been excepted to, for a party to have the court's
   action in that regard reviewed.

2. ———: ———: PARTY BOUND BY HIS OWN ACT.   A *fortiori*
   will the party who insists that a case be withheld from a jury be
   bound by his act.

*This case was received too late to be placed in chronological order.

Vining v. Franklin Fire Ins. Co.

3. **Insurance: VOID POLICY: ASSIGNMENT OF POLICY.** While it is true, a void policy is no less void after assignment, it is equally true that however void, it may be validated, and however dead, it may be revived by an arrangement with the parties.

4. ———: **CONTRACT OF INSURANCE NEED NOT BE IN WRITING: POLICY OF INSURANCE.** A contract of insurance does not necessarily imply a policy, nor indeed a written instrument at all. It may be orally made.

5. ———: ———: **CONDITIONS OF CONTRACT OF INSURANCE PRESUMED.** If the contract of insurance is orally made and nothing said about conditions, it is presumed the parties intended it should contain the usual conditions of such contracts.

6. ———: ———: ———. And in the case at bar, the writing in question, however, on the back of the old policy, referring to it and providing that it should attach in the future for plaintiff's benefit, was a complete policy in the ordinary form.

7. ———: **MISTAKE IN FACT CONCERNING INSURANCE: RISK.** If the risk of insurance never attaches by reason of a mistake, free from any said practices, the insured is entitled to the return of the whole premium.

8. ———: ———: **ADJUSTMENT OF LOSS: ACCORD AND SATISFACTION.** An adjustment of loss by fire, in an insurance covering said loss, is an accord but not a satisfaction, which is no defense to an action in the policy of insurance.

9. ———: ———: **DENIAL OF LIABILITY: WAIVER.** A denial of liability on an insurance policy, is a waiver of those requirements contained in the policy concerning appraisement of property and adjustment of loss, and an action may be brought without complying with them.

Appeal from St. Louis City Circuit Court.—*Hon. Pembrook R. Flitcraft*, Judge.

REVERSED AND REMANDED.

STATEMENT OF THE CASE.

The destroyed household goods, which are the subject-matter of this litigation, were owned at the time the fire occurred,

to-wit, December 16, 1897, by the appellant. She and Charles L. Vining, her brother, were the unmarried children of Mrs. H. B. Vining, who died June 5, 1897. There were several brothers and sisters who were married. Charles L. Vining was a travelling salesman and supported his mother and sister. Their home which was in Shrewsbury Park, had been furnished by him comfortably and even richly. While he was on the road he was informed by a letter from his mother that several fires had occurred in the neighborhood of their home, whereupon he wrote her to procure insurance upon the furniture and household effects. She called on Messrs. Delafield & Snow, general agents of the defendant company in the city of St. Louis, and took out a policy of insurance in her own name on said property to expire November 30, 1896. This transaction took place in 1895. Upon the expiration of that policy, Mrs. Vining applied to the same agency for another which was written to run from November 30, 1896, for one year. The premium was $15, of which she paid $10 at the time. On the third day of March, 1897, cither she or her son Charles, went to the office of Delafield & Snow to pay the balance of the premium. There is a dispute in the evidence, as to who went there for that purpose, which we think unimportant. Whoever it was, a new contract was made by which the one-year policy was taken up and one for three years written in lieu of it, running from November 30, 1896, the date of the surrendered policy. The respondent company was the insurer. The premium was $30, and $20 additional were paid to the agents, which with the $10 previously paid, made the full amount. Charles Vining furnished it all. None of the Vinings knew the policy was void because issued to the mother, who did not own the property covered, until Charles and the plaintiff Lotta, were told so by J. L. Herold, an intimate friend of the brother, about June 12, 1897, after Mrs. Vining's death. He was visiting them at their

home, and a talk coming up about the furniture and the insurance on it, he learned the latter was in the mother's name and informed them of the legal flaw in the risk. The conversation arose in reference to a contemplated trip by Charles Vining to the Klondike country in Alaska. In the presence of Mr. Herold, he made a gift of all the household goods and effects to his sister Lotta on or about the said twelfth day of June, telling her he was going to Klondike and as she had no one to support her, he would make her a present of the property. It is not denied that he did this. On the fourteenth day of June, 1897, he and his sister repaired to the agency of Delafield & Snow for the purpose of changing the insurance. The only material conflict in the evidence is about what transpired there, nor do we think that conflict is so material that it should control the decision of the case. George L. Day, a clerk in the office, testified that young Vining said his mother was dead and *they* wanted to turn this property all over to the sister. That he (Day) knew the mother was dead before they came in, because he had seen it in the newspapers; Charles said they did not want to make any claim to the property but to give it all to the sister, "and of course, in making an assignment of this kind, if the party is dead, they can not make an assignment on the back of the policy and being requested to do so, we made the indorsement on the back." He further swore, that nothing was said about Charles Vining being the owner of the property, or that he wanted the policy changed to the sister, or a new policy. The witness claimed that Charles Vining spoke in the plural, saying "we want to turn it over."

The testimony of young Vining is that he introduced Mr. Snow to his sister and told him he had given her the property, had brought the policy and as the property now belonged to her, wanted him to write out a new policy of insurance in her name, telling him also, that the policy had been in his mother's name,

but she had never owned the furniture.    He said he also showed
him a newspaper clipping announcing the death of his mother.
Snow replied, according to the testimony of this witness, "All
right, Mr. Vining, leave that policy here and we will write you
a new one."    He called the next day and Snow delivered him
the old one, saying, "We did not write you a new policy, but we
have put on this indorsement, which makes it the same as a new
policy.".    To a query by the witness, Snow assured him it was
all right.    This is denied by Mr. Snow, who testifies he did not
see Vining and his sister on that occasion at all; that the busi-
ness was transacted with Mr. Day.    He admits, however, that
he did sign the indorsement, to be set out presently, and it is
conceded that the policy was kept in the office of Delafield &
Snow until the next day and the indorsement put on it in the
absence of the plaintiff and her brother.    That indorsement is
as follows:

"St. Louis, Mo., June 14, 1897.

"Notice received of the death of Mrs. H. B. Vining.
This policy shall hereafter cover and attach in the name of Miss
Lotta A. Vining, ceasing to cover as written heretofore.

"DELAFIELD & SNOW, Agents."

No additional premium was paid by the plaintiff or her
brother, nor was any portion of the thirty dollars, which the
latter had paid theretofore, returned.

After the fire, the loss was adjusted by W. C. Butler, the
respondent's regular adjuster, at the sum of $1,550.    There
was a dispute between the plaintiff and the company about the
amount of the loss, the former claiming it to be much greater
than the amount at which it was adjusted, finally agreeing to
accept that amount to avoid litigation.    The proof of loss was
made out by Butler himself in plaintiff's behalf and forwarded
to the company at Philadelphia, on the twenty-first day of De-
cember, 1897.    Nothing was then said against her right to be

paid, but it recited that the adjuster believed "the *heirs* had suffered a loss without fraud by the fire to the amount of $1,550." The company did not pay and more or less negotiation took place about the loss afterwards ending in the plaintiff seeking legal advice and notifying the company that she renounced the adjustment. Prior to that time, Butler had notified the plaintiff that some of her married brothers and sisters claimed an interest in the money due for the loss and that the company would not pay it without there was an administrator appointed for the estate of Mrs. H. B. Vining, or receipts given by all of the latter's heirs. A letter was addressed both to the respondent company at Philadelphia and to its adjuster in St. Louis, asking whether anything further was desired in the way of notice, ascertainment, estimate, proof of loss or other formalities touching the plaintiff's claim. The letter to the company also advised it that the plaintiff would no longer accept the amount, $1,550, in full settlement. The company replied, under date of January 27, 1898, by letter addressed to the plaintiff's attorneys at St. Louis, in which receipt of the plaintiff's communication to it was acknowledged. In answer to the inquiry as to whether anything further was demanded in the way of estimate of the amount of the loss and other matters, the letter said:

"The loss has been adjusted at the sum of $1,550 as set forth in the proofs of loss on file here, which sum we are ready to pay to the party or parties who are or may become legally qualified to receive it and discharge the company.

"The policy was originally made to Mrs. H. B. Vining; who has since deceased, and we require the signature of a duly appointed administrator or the joint signatures of all the heirs.

"Yours very truly,

"ROBT. H. WASS, Manager."

Thereafter the present action was instituted. The petition declares on a contract of insurance alleged to have been

Vining v. Franklin Fire Ins. Co.

made by the defendant and the plaintiff on June 14, 1897, on the property in question, sets forth the destruction of it by fire, and the usual averments. The answer, besides a general denial, sets up the conditions of the original policy of insurance in regard to its being void. That the assured was not the sole owner of the property; further, that a disagreement existed between the plaintiff and the defendant as to the amount of the loss which had never been ascertained, it is stated, by an appraisement as the policy required. The third count alleges that the indorsement of June 14, 1897, was procured by fraudulent representations made by the plaintiff that she had acquired the interest of her mother in the insured property. It denies that she had procured such interest or that Mrs. Vining had any insurable interest in the property. The last count of the answer sets up the alleged fraudulent representations and acts of the plaintiff and prays for affirmative relief and that the indorsement of June 14, be cancelled and for naught held.

On the trial in the circuit court the appellant demanded a jury trial, which was refused by the court on the ground that the answer had converted the whole proceeding into one in equity. After the evidence had been heard, the court found that the indorsement was null and void, ordered the same cancelled and denied the plaintiff a recovery.

*A. R. Taylor* and *J. H. Trembley* for appellant.

(1) Defendant's defense, as evidenced by its answer, could have been urged at law as well as in equity. The answer did not have the effect of converting plaintiff's action into an equitable proceeding because the relief to which it is entitled under its answer, if true, is not such as only a court of equity could grant. The court, therefore, erred in depriving plaintiff of her right of trial by jury. Estes v. Fry, 94 Mo. 266, 271.

(2) Assuming this, however, to be a proceeding calling for equitable jurisdiction as contended by defendant, plaintiff, under all the evidence, is entitled to recover the full amount sued for.   (3) There can be no question, under all the evidence, but that Charles L. Vining paid the $30 consideration for the three year policy issued in the name of Mrs. H. B. Vining, on which the indorsement of June 14, 1897, was made. (4) The policy as issued to Mrs. H. B. Vining, was void for lack of insurable interest in the insured.   The fact that said policy was originally void is pleaded by defendant and acquiesced in by plaintiff.   (5) While the court erred in holding that the amended answer had the effect of converting the cause into an equitable proceeding, and in depriving plaintiff of the right of trial by jury, the error was committed at the invitation of defendant.   The cause having been tried on the theory urged by defendant it could not now complain if this court, pursuing defendant's theory, should hold, exercising equitable jurisdiction, that under the law and the evidence plaintiff was entitled to recover and should proceed to enter such a decree as the lower court should have entered.   Johnson-Brinkman v. Central Bank, 116 Mo. 558, 569; State ex rel. v. St. Louis Court of Appeals, 99 Mo. 216, 223; Carroll v. Campbell, 25 Mo. App. 630-635.   (6) The decree which the lower court should have entered was one for the full amount sued for with six per cent interest per annum from April 11, 1898, sixty days after proof of loss was made, with ten per cent damages for vexatious refusals to pay the loss sustained by plaintiff. R. S. 1899, sec. 8012.

*George W. Wright* for respondent.

The court refused plaintiff's demand for a jury trial because the answer and cross-bill of defendant converted the action

into an equitable proceeding. This was not error. The defendant's third defense, or cross-bill, asserts that the indorsement of June 14, 1897, was procured by false and fraudulent statements and representations, and believed by it to be true and, therefore, the writing was void. The prayer following this cross-bill demanded the cancellation and annulling of the indorsement and other equitable relief. This defense converted the proceeding into an equitable one. McCollum v. Boughton, 132 Mo. 601; Allen v. Logan, 96 Mo. 591; Wendover v. Baker, 121 Mo. 290; Freeman v. Wilkerson, 50 Mo. 554; Conran v. Sellew, 28 Mo. 320; Ellis v. Kreutzinger, 31 Mo. 432; Richardson v. Pitts, 71 Mo. 128.

GOODE, J.—Strong presentations of both sides of this cause have assisted us. We shall not go into the inquiry whether error was committed in refusing the appellant the right to a jury trial, as the conclusion we have reached about the case renders the consideration of that point unnecessary. If the court was wrong in holding that the equitable defense pleaded in the answer, and the affirmative relief prayed in connection therewith made the whole case one for equitable cognizance, it was an error the respondent invited and it can not complain, therefore, if we dispose of the appeal on the same theory. Hill v. Drug Co., 140 Mo. 433; Pope v. Ramsey, 78 Mo. App. 157. The refusal of a jury must have been excepted to for a party to have the court's action in that regard reviewed. Klotz v. Parteet, 101 Mo. 213; Estes v. Fry, 94 Mo. 266; Leitch v. Miller, 40 Mo. App. 180; Calahan v. Shotwell, 60 Mo. 398; Lee v. Dunn, 29 Mo. App. 467. A fortiori will the party who insists that a case be withheld from a jury be bound by his act.

While we regret to differ from the chancellor who tried the controversy below, about the effect of the evidence, an attentive reading of the record has failed to produce an impression of

bad faith or fraud on the part of either the plaintiff or her brother in procuring the indorsement of June 14, 1897. We can not defer to the finding on that issue. Every act done by them was consistent with perfect integrity, nor was any motive shown for dishonest practices by them on the agents of the company· after the death of Mrs. Vining and the gift of the property by the brother to the plaintiff; it was proper for them to look after the insurance. The version of the occurrence in the office of Delafield & Snow on June 14, given by Charles Vining, displays an upright and lawful purpose to have the insurance put on a safe basis—one which conformed to the altered circumstances. He testified that he requested a new policy of insurance in the name of his sister, telling Mr. Snow that while it had formerly been insured in his mother's name she had never owned it, but that it was now owned by his sister by gift from him. That was a natural statement for him to make.

On the other hand, the version given by Day places the insurance company in a bad light. He knew Mrs. Vining was dead; his testimony is that Charles said the heirs wanted to turn the property over to Lotta. Thereupon the agency kept the policy until the next day, made the foregoing indorsement on it and delivered it to Charles Vining as being a good contract of insurance. But these experienced insurance men must have known and must be held to have known that if Mrs. Vining owned the property, as they claim they believed she did, the other heirs could not by their act vest title to it in the plaintiff until the estate had been administered. This would look too much like an attempt on the part of the insurance company to continue the policy so that there would be no risk thereafter, as there had been none before. The other view comported with good faith on the part of all concerned and will be adopted. The weight of the evidence, too, seems to be with the appellant in regard to the transactions. She and her brother both testify

that it was had with Mr. Snow.

It is urged that the original policy being void in the hands of Mrs. Vining, because she had no insurable interest in the property, the indorsement was likewise void. This position is untenable. Numerous authorities are cited by the respondent to support it, but they are all cases in which the policies were assigned by the assured in whose hands they were void from the first. This action is not on assigned policy. An assignee takes no better title and no more interest than was held by his assignor. If the policy was void when issued it would be void, of course, when assigned, even though the company assented to the assignment. This would necessarily be true, because the transaction would be simply a transfer of the original contract. If the original contract was a nullity, only a nullity would be transferred. Froehly v. Insurance Co., 32 Mo. App. 302, is to be distinguished from the present case, because that was really an attempted assignment of a void policy by Froehly to his wife. The opinion says that the theory of a new contract having been made was wholly unsupported by any evidence. The defendant there was a mutual fire insurance company, which could only write insurance on property owned by its members, and it was not shown that Mrs. Froehly was or could be a member. It was held, moreover, that there was no evidence to show that a new contract was applied for and that the officers intended to make a new one; or that the transaction, under the charter of the company, would have been valid if they had so intended.

But this defendant undoubtedly had the right to make a valid contract of insurance with Lotta A. Vining, which right would not be affected by the fact that it had previously made a void one with her mother. It might also adopt as part of the contract with the plaintiff, stipulations and provisions in the

one made with Mrs. Vining.   In other words, instead of filling up a fresh blank it could make a new contract of insurance by an indorsement on the back of the old one, inasmuch as the new one was to run for the same period, cover the same property and called for the same premium the former one did.   While it is true, a void policy is no less void after assignment, it is equally true that however void, it may be validated, and however dead, it may be revived, by an arrangement between the parties. Ostrander on Insurance, sec. 22; May on Insurance, 125; New v. German Ins. Co., 5 Ind. App. 82, 31 N. E. 435; Ins. Co. v. Watson, 23 Mich. 486; Brink v. Ins. Co., 70 N. Y. 593; Ferre v. Trust Co., 67 Pa. St. 373.   The case is not complicated. by the fact that the new contract was made by an indorsement on the back of the old one.   That mode was as good as any other, provided the elements of a contract are found in the indorsement.   A contract of insurance does not necessarily imply a policy, nor indeed a written instrument at all.   It may be orally made.   Like any other agreement its essence is a meeting of the minds of the contracting parties.   Lingenfelter v. Phoenix Ins. Co., 19 Mo. App. 252; Duff v. Fire Ass'n, 129 Mo. 460; Henning v. Ins. Co., 47 Mo. 432; Baile v. Ins. Co., 73 Mo. 73.   If the contract is orally made and nothing said about conditions, it is presumed the parties intended it should contain the usual conditions of such contracts.   Salsbury v. Ins. Co., 32 Minn. 458.   The writing in question, however, on the back of the old policy, referring to it and providing that it should attach in the future for the plaintiff's benefit, was a complete policy in the ordinary form.   The only change needed was the name of the beneficiary, and that appears in the memorandum.   Beyond a doubt, the minds of the contracting parties in this case were thoroughly agreed.   The agents of the defendant company undertook to insure the plaintiff on the property in question for a term to run from June 14, 1897, to

November 30, 1899. The plaintiff thought she was getting insurance for that term.

It is insisted that as a new contract, the transaction of June 14 must fail, because there was no consideration to support it. We accede to the proposition that there must have been an independent consideration for an agreement to insure made by the defendant on that day, in order for such agreement to be effective; otherwise it would be a nude pact on which an action would not lie. But we think it is clear there was a sufficient consideration and that both parties recognized that fact. It is conceded the original policy issued to Mrs. Vining was void and also that the premium of thirty dollars had been paid by Charles Vining. It is likewise conceded that no fraud was practiced to obtain that policy, but that it was taken out by Mrs. Vining in her own name by mistake. While the assured can not recover unearned premium on account of a void policy if there has been fraud practiced in its procurement, the rule is otherwise where the holder is innocent. If the risk never attached by reason of a mistake, free from any evil practices, the insured is entitled to the return of the whole premium, for none of it was earned. May on Insurance (4 Ed.), sec. 568; Ostrander on Insurance, sec. 18; Gray v. Sims, 3 Wash. C. C. 276; Penson v. Lee, 2 Bos. & P. 330; Waddington v. Ins. Co., 17 Johnson (N. Y.) 23; Clark v. Ins. Co., 2 Woodb. & M. 472; Friesmuth v. Ins. Co., 10 Cush. 588; Anderson v. Thornton, 8 Exch. 425; Waller v. Northern Ass'n Co., 64 Ia. 161; Delavigne v. Ins. Co., 3 Johns. cas. 310; Tyrie v. Fletcher (1774-8), Cowp. 666. Besides, Mrs. Vining's policy expressly provided for a return of the premium in case it was void, and a good part of the premium had not been earned even if it was valid. The new contract was to take the place of the old one during its unexpired term in consideration of the reten-

tion by the company of the unearned premium.    This was consideration enough.

The plaintiff had the right to recede from the adjustment which had been made.    She would have had this right at any time before payment, if the company had intended to pay, and she had it all the more because they did not so intend.    The adjustment was an accord but not a satisfaction, which is no defense to an action.    Giboney v. Ins. Co., 48 Mo. App. 185; Goff v. Mulholland, 28 Mo. 397.

The only remaining point that requires consideration is whether the action was prematurely brought?    The basis of this contention is that an appraisement or an effort by the assured to secure an appraisement, was a condition precedent to bringing suit on the policy.    Generally speaking, this is true, where there is such a provision in the policy.    Murphy v. Mercantile Ins. Co., 61 Mo. App. 321; McNess v. Southern Ins. Co., 69 Mo. App. 232; Swearinger v. Ins. Co., 66 Mo. App. 93; Hooker v. Ins. Co., 69 Mo. App. 141; Hamilton v. Ins. Co., 136 U. S. 242.    But this provision, like any other contained in a contract, may be waived.    It is supposed to be there for a rational purpose; namely, to ascertain in a fair and impartial way what the loss is in order that the company may settle it.    If the company does not intend to settle, there is no reason why the loss should be appraised.    If litigation must be resorted to to collect, the means of ascertaining the damage without litigation need not be called into play.    The law is that a denial of liability is a waiver of those requirements and an action may be brought without complying with it.    Dautel v. Ins. Co., 65 Mo. App. 44.

The adjuster testified that he refused to pay the plaintiff unless she would get receipts from the other heirs.    In fact, he demanded an administration of the estate of her mother and a receipt from the administrator.    Moreover, when the com-

Vining v. Franklin Fire Ins. Co.

pany was asked in the letter of January 25, 1898, if it desired anything further in the way of an estimate of the loss, it replied that the loss had already been adjusted and that it was ready to pay the same to the party or parties who were or might become legally qualified to receive it and discharge the company; further, that it required the signature of a duly appointed administrator, or the joint signatures of all the heirs. This was in effect a denial of liability to the plaintiff and a refusal to pay her any sum whatever. The waiver was much stronger than in Dautel v. Insurance Co., supra. The plaintiff was thereby relieved from the necessity of attempting to secure an appraisement of the loss before instituting her action.

The testimony shows, in the clearest possible manner, that the damage sustained exceeds the face of the policy. It was above two thousand dollars. No evidence was offered by the defendant to rebut this proof, which is satisfactory to our minds. The judgment of the court below will be reversed and the cause remanded with a direction to the trial court to enter judgment for the plaintiff for the sum of two thousand dollars, with interest at the rate of six per cent per annum from a date sixty days after the reception by the defendant company of the proofs of loss which were mailed to it by the plaintiff, and for the costs of the action. All concur.