STATE OF MISSOURI, at the Relation of WILLIAM
H. STICKLE, Appellant, v. D. F. MARTIN,
Commissioner of Street Cleaning, W. S. CLAG-
GETT, Auditor, M. A. FLYNN, Comptroller, BEN
JAUDON, Treasurer, ELIHU W. HAYS, AN-
DREW E. GALLAGHER, ED. F. WEBSTER,
HARRY E. BARKER, EUGENE H. BLAKE,
LOUIS OPENSTEIN, WENTWORTH E. GRIF-
FIN, JOHN RANSOM, Members of the Board of
Public Works, Respondents.

**Kansas City Court of Appeals, February 12, 1917.**

1. **MANDAMUS, WRIT OF: City Employee: Discharge.** One who is
employed as a public servant in a department of municipal corpora-
tion, whose duty it is to see that certain regulations of the city are
carried out in a proper and efficient manner, should not be engaged
in a private business that requires the regulation at his hands, as
an officer of the city, or involved in the doing of things which are
supervised by the office in which he is employed, and of which he
and his fellow employees of such office are required to regulate.

2. ———: **Removal for Cause.** Where an employee of a municipal cor-
poration is discharged for sufficient cause, he cannot effect his
reinstatement by the assistance of a writ of mandamus, and this
is especially the rule when the cause for removal was such that
it would be the duty of his superior officers to immediately remove
him if he were reinstated.

Appeal from Jackson Circuit Court.—*Hon. O. A.
Lucas,* Judge.

AFFIRMED.

*A. N. Gossett* and *T. J. Madden* for appellant.

*J. A. Harzfeld, A. F. Smith* and *Charles N. Black-
mar* for respondents.

BLAND, J.—In the circuit court of Jackson County,
Missouri, at Kansas City, appellant brought a pro-
ceeding seeking to mandamus the respondents, officers
of the Municipality of Kansas City, Missouri, to com-

pel them to reinstate appellant in the position of
Deputy Commissioner of Street Cleaning of said city,
and to issue to him warrants for the salary accruing
since the time of his discharge. In the lower court
the peremptory writ of mandamus was denied and the
relator's petition therefor was dismissed. Thereafter
appellant filed a motion for a new trial which the lower
court overruled and appellant appealed.

The appellant was, on June 6, 1912, and for some
months prior thereto, Deputy Commissioner of Street
Cleaning of Kansas City, Mo. He held his position by
virtue of the civil service provisions of the Charter of
Kansas City, 1909. On said date he was discharged by
the Commissioner of Street Cleaning, who gave as a
reason therefor that the discharge was made by order
of the Board of Public Works. A communication from
the Board of Public Works directed the Commissioner
of Street Cleaning to discharge appellant "for the
good of the service."

The undisputed testimony in this case shows that
while appellant was in the public service as Deputy
Commissioner of Street Cleaning he was also engaged
in the business of doing various kinds of work, such
as putting in foundations, building porches, walks and
steps on private property; appellant conducted this
business through a partnership that he had formed with
one Somerville, the latter doing the actual work and
appellant financing the business. In pursuance of his
private business, appellant secured permits to use the
streets and sidewalks of Kansas City for the purpose
of storing building materials. These permits were got-
ten from the office in which he was employed and signed
by another clerk therein. The permits were secured by
application made by appellant, and as all of them were
in practically the same form we will set out but one:

"Kansas City, Mo., April 17, 1911.
To the Commissioner of Street Cleaning:-

I hereby make application for a permit to use the
street, sidewalk and alley abutting on the property
herein described, for the purpose of piling building

material, depositing refuse from building, rubbish, etc., at or from No. 3130 Spruce Ave., for a period of thirty days, and if granted, I accept such permit with the understanding that my rights thereunder cease at the expiration of such period, and I further agree that if I fail to perform the requirements of the Charter and Ordinances of Kansas City, relating to the work to be done under such permit, the Commissioner of Street Cleaning shall have the right to revoke such permit without notice to me.

In consideration of the granting of said permit I hereby agree and bind myself, my agents, and employees, to use said street, sidewalk and alley, in accordance with all the requirements of the Charter and Ordinances of Kansas City, Missouri, the requirements of the rules and regulations of the Board of Public Works, and to the satisfactions of the Commissioner of Street Cleaning, and to be responsible for any loss or damage sustained by the City, directly or indirectly, on account of the granting of such permit or the use of such street, sidewalk or alley under such permit, whether such loss or damage is or is not due to negligence or misconduct on my part.

W. H. STICKLE, Applicant,

By—————, Agent.

New Deposit
3836 Euclid

Permission is hereby granted as above requested this 17th day of April, 1911.

Commissioner of Street Cleaning

By F. W. FRICK''

The undisputed testimony was that the department in which appellant was employed had charge of issuing these permits; that it was the duty of persons employed in said department, including appellant, to see that the material that was piled on the street was so located that water would flow in the gutters; that such material would not obstruct the street and that if any complaint was made regarding the placing of the

material on the street, to go out and investigate such complaint.

Mr. William C. Weaver was the Commissioner of Street Cleaning, under whom appellant worked. He testified, on behalf of the plaintiff, that he would not have permitted Stickle to remain in the city service if he had known that Stickle had been taking out said permits; and that he would not knowingly have granted any employee of the department a permit to do work on the streets while drawing a salary from the city. Appellant testified that he was the owner of a lot in the southeastern part of Kansas City which was several feet below grade; that he wanted the lot filled up and that he gave the location of the lot to the clerks in appellant's office and that Mr. Weaver went out and looked at the lot in order to see whether it would afford a practical dump, and came back and had the lot put on a list containing property used for city dumps, and that, thereafter the city did use his said lot for dumping purposes. While it is not clear as to whether appellant had the city fill up his lot for him, or whether Mr. Weaver selected the lot at the instance of appellant because the city needed a dump in that part of the city, the evidence does show that appellant showed extraordinary diligence in having the city select his lot for the purpose aforesaid, so that it might be improved without cost to himself.

A public servant whose duty it is to see that certain regulations of the city are carried out in a proper and sufficient manner ought not to be engaging in a business that might require regulation at his own hands as an officer of the city, and it seems to us, from the foregoing facts, that appellant was attempting to serve two masters whose interests were antagonistic. The Charter of Kansas City is so drawn as to leave no doubt but that it was intended that its employees should at no time assume a position inconsistent with their duties to the city. It requires that no officer shall hold two appointments under the city, and that all officers and employees shall not be interested in any contract under

the city, or in any work done by the city, or furnish any supplies for the city, or in the sale of any property to or for the city. [Section 25, Article 4, Kansas City Charter, 1909.] That no financial officer of the city shall buy or sell for the purpose of speculation any indebtedness of the city, or deal therein. [Section 29, Article 4, Kansas City Charter, 1909.]

Aside from the evident purpose of the framers of the Charter, as a matter of public policy, it was inconsistent with appellant's duties to the city for him to be engaged in a private business which involved the doing of things which were supervised by the office in which he was employed, and which he and his fellow employees of such office regulated.

"Delinquent officers will not be restored to office because of irregularities in the proceedings under which they were removed, when it would be the duty of those having authority to do so to remove them immediately on restoration." [23 Am. and Eng. Ency. of Law (2 Ed.), 453; 2 Spelling on Injunctions and Other Extraordinary Remedies, section 1380; State ex rel. v. Temperance Ass'n., 42 Mo. App. 485.]

"The court will not grant a party the assistance of this prerogative writ (mandamus) when it is acknowledged that the corporation had very sufficient cause to remove him, and when they would undoubtedly remove him again the very instant he should be restored." [Rex v. Axbridge, 2 Cowp. 523.]

Without going into the merits as to whether the appellant would be entitled to mandamus in this cause, the court below properly refused him the writ for the reason that on account of the facts detailed herein it would be the duty of appellant's superior officer to immediately remove him were he reinstated.

The judgment is, therefore, affirmed.