PETER HELLMAN, Respondent, v. NATIONAL COUNCIL OF THE KNIGHTS AND LADIES OF SECURITY, Appellant.

St. Louis Court of Appeals. Opinion Filed February 5, 1918.

1. **INSURANCE: Fraternal Insurance: Recovery of Dues Paid.** Where a benefit certificate was secured by a fraudulent misrepresentation on the part of the insured as to his occupation, he cannot, after the fraud has been discovered, and the policy avoided, maintain an action for return of the premiums paid by him.

2. ———: ———: **Fraud: Misrepresentation of Occupation.** Stipulations and evidence, in an action to recover premiums paid on a mutual benefit insurance certificate, examined and *held* that insured fraudulently made a false statement as to his occupation, with full knowledge of the occupations prohibited by the order, and that he knew of his ineligibility to membership.

3. **EQUITY: Clean Hands: Benefit Certificate Fraudulently Procured: Recovery of Dues Paid.** In an action as for money had and received to recover premiums paid for mutual benefit insurance, *held* that plaintiff, because of his false and fraudulent statement in procuring the issuance of the certificate, had no standing in court; the action being of an equitable nature.

Appeal from the Circuit Court of the City of St. Louis.—*Hon. Karl Kimmel*, Judge.

REVERSED.

*W. Paul Mobley* for appellant.

(1) Representations made by an applicant for membership in a Fraternal Beneficiary Association are warranties and when false avoid the policy and work a forfeiture of all rights of the applicant and the beneficiary. McDermott v. Modern Woodmen of America, 97 Mo. App. 636; Valleroy v. Knights of Columbus, 135 Mo. App. 574; Hoagland v. Modern Woodmen of America, 157 Mo. App. 15; Aloe v. Mutual Reserve Life Association, 147 Mo. 561; Sovereign Camp Woodmen of World v. Hall, 104 Ark. 538; Dinan v. Supreme Council of the Catholic Mutual Benefit Association, 201 Pa. St. 363; Holland v. Chosen Friends, 54 N. J. Law. 490; Supreme Council of American Legion of Honor v. Green, 71 Md. 263. (2) The application, Constitution and Laws of a Fraternal Beneficiary Association form a part of the contract and the members are bound by their provisions. Claudy v. Royal League, 259 Mo. 92; Gallop v. Royal Neighbors of America, 167 Mo. App. 85; Grand Lodge v. McFadden, 213 Mo. 269-284; Westerman v. Supreme Lodge 196 Mo. 738; Easter v. Yeoman, 172 Mo. App. 292. (3) Neither the insured nor the beneficiary has a vested interest in the Beneficiary Certificate. The cancellation of the certificate, or the refusal of the defendant to accept further assessment when it learned that Hellman was engaged in a prohibited occupation, did not interfere with any vested rights either of Hellman or his beneficiary. Claudy v. Royal League, 259 Mo. 92; Callies v. Modern Woodmen of America, 98 Mo. App. 521, l. c. 526. (4) The Beneficiary Certificate having been obtained by actual fraud, the Society was under no legal obligation to return what had been paid as assessments before it could claim that the contract was not in force. Taylor

v. Grand Lodge, A. O. U. W. of Minnesota, 96 Minn. 441; Wheeler v. Mutual Assn., 102 Ill. App. 48; Touro v. Cassin, 9 Am. Dec. 680; Swartz v. U. S. Insurance Co., 21 Fed. Cases, 770; Hoyt v. Gilman, 8 Mass. 336. (5) Fraternal beneficiary associations are essentially benevolent, the insurance feature being merely an incident, and it cannot be said that there was failure of consideration for the payments which the plaintiff seeks to recover. Umberger v. Modern Brotherhood of America, 162 Mo. App. 141; State ex rel. v. Vandiver, 213 Mo. 187; Currier v. Catholic Order of Foresters, 88 Atl. Rep. (Vt.) 525. (6) The peremptory instruction to find for defendant offered at the close of plaintiff's case should have been given. (7) The judgment is so grossly and overwhelmingly against the evidence and the law as to call for a reversal.

*George D. Little* for respondent.

ALLEN, J.—Defendant is a fraternal beneficiary society, and on or about June 3, 1907, plaintiff became a member of such society and defendant issued to him a benefit certificate in consideration of certain monthly premiums to be paid thereon. On or about March, 1913, defendant refused to receive further payments on the certificate, declaring it null and void, upon the ground that plaintiff had obtained the issuance thereof by fraud. Plaintiff thereupon instituted this action, before a justice of the peace, for a recovery of the premiums paid, as for money had and received. The cause reached the circuit court on appeal where a trial before the court, a jury having been waived, resulted in a judgment for plaintiff in the sum of $230.10, being the total amount of premiums paid by plaintiff on the certificate, to-wit, $212.52, with interest thereon. From this judgment defendant prosecutes the appeal before us.

To sustain the issues on his part plaintiff introduced in evidence the benefit certificate. Among other things it provided that if the member holding the

certificate should be or become engaged in any of the prohibited occupations, ''as provided in the Laws of the Order,'' then the certificate should be null and void, and that all money which had been ''paid into reserve fund, beneficiary fund or National Council general fund'' should be forfeited.

Thereupon plaintiff's counsel made the following statement, viz:

''It is stipulated by and between the attorneys for the plaintiff and the defendant that the insurance policy, or fraternal benefit certificate, . . . was duly issued by the defendant to plaintiff, Peter Hellman; that the plaintiff paid the premiums on said policy up to the premium for March, 1913; that the plaintiff, in March, 1913, tendered the premium due to defendant, and that the premium due in that month was refused by defendant on the ground that the policy had been secured by the plaintiff by fraud, said fraud consisting of a misrepresentation as to his occupation at the time of the issuance of said policy, and that from the date of the certificate up to the time of the refusal to accept the premium the plaintiff was engaged in the occupation of a saloon-keeper and bartender, which is one of the prohibited occupations of the society, prohibited by the terms of the policy, and also by the constitution and by-laws of the defendant society.

''It is further stipulated and agreed that the plaintiff, from the time of the issuance of said policy up to the time of the refusal of defendant to accept premiums on said policy, had paid to defendant company the premium called for by said policy, namely $2.65 per month, the said payments having been made from the month of June, 1907, until the month of March, 1913.

''It is further stipulated and agreed that the plaintiff at the time of the application and issuance of the policy, introduced in evidence, was engaged in the business of saloonkeeper and bartender, and continued in that occupation up to the time of the refusal of defendant to accept further premiums on said policy.''

Thereupon defendant's counsel made the following statement, viz:

"It is further agreed and stipulated between the parties hereto that the defendant society is now, and was at all times mentioned in the plaintiff's petition, a fraternal beneficiary society organized and incorporated under the laws of the State of Kansas, and authorized and licensed to do business as such fraternal beneficiary society in the State of Missouri under and by virtue of the laws of the State of Missouri in such cases made and provided.

"It is further stipulated and agreed that the plaintiff stated and warranted in his written application for membership in the defendant society that at said time he was engaged in the occupation of grocery clerk; that in said written application plaintiff agreed and warranted that all of the answers made by him in said application were fair and true and constituted a strict warranty; that in said written application plaintiff agreed to be governed by the constitution and by-laws of defendant society then in force, and thereafter enacted."

Plaintiff's counsel thereupon announced that he would rest upon the stipulation.

Thereupon defendant requested the court to declare as a matter of law that plaintiff was not entitled to recover, which declaration the court refused to give.

Defendant then introduced in evidence the "constitution and laws" of defendant society in force at the date of the application of plaintiff for membership in the society, and likewise introduced defendant's constitution and laws in force in March, 1913. The constitution and laws in force at the time of plaintiff's application for membership, in making provision regarding "prohibited occupations," provided, among other things, that persons should not be received or retained in the beneficiary or social membership of any subordinate council who were engaged in certain occupations, among these being "persons engaged . . . as saloon owner, saloonkeeper or bartender engaged in the

sale of spiritous, malt, or vinous liquors as a beverage;" and severe penalties were imposed upon the "financier" of any council who should receive assessments from any member whose certificate had been cancelled on such ground, or who should reinstate such member. Such, in substance, were likewise the provisions of defendant's constitution and laws in force in March, 1913.

It is argued for defendant, appellant here, that under the evidence and the stipulation submitted to the trial court plaintiff was not entitled in law to the return of the premiums paid by him, and that the court erred in refusing to so declare and in entering judgment for plaintiff. This is the only question before us.

The rule of law pertinent to the situation in hand appears to be well stated in 14 Ruling Case Law, p. 959, sec. 132, as follows: "The authorities are unanimous in declaring that where a policy was secured by a fraudulent misrepresentation on the part of the insured, he cannot, after the fraud has been discovered and the policy avoided, maintain an action for the return of the premiums paid by him. But where the misstatements made by the insured were not wilfully false, so that there was no fraud on his part, and the policy by its terms was void *ab initio*, so that the risk never attached, the insured is entitled to a return of the premiums."

This doctrine is well supported by the authorities. [See Vining v. Franklin Fire Ins. Co., 89 Mo. App. 311; Elliott v. Knights of Modern Maccabees, 46 Wash. 320, 13 L. R. A. (N. S.) 856; Insurance Co. v. Pyle, 44 Ohio St. 19; Jones v. Insurance Co., 90 Tenn. 604, 18 S. W. 206; Himely v. South Carolina Ins. Co., 1 Mill. Const. (S. C.) 154, 12 Am. Dec. 623; Feise v. Parkinson, 4 Taunt. 640, 14 Eng. Rul. Cas. 530 and notes; Metropolitan Life Ins. Co. v. Freedman, 159 Mich. 114, 32 L. R. A. (N. S.) 298; 2 May on Insurance (4 Ed.), p. 1339, sec. 567; Swartz v. U. S. Ins. Co., 21 Fed. Cas. 770; Hoyt v. Gilliman, 8 Mass. 336; Taylor v. Grand Lodge A. O. U. W., 96 Minn. 441.

In Vining v. Franklin Fire Ins. Co., supra, 89
Mo. App. 311, l. c. 323, this court, in an opinion by
Goode, J., said: "While the assured cannot recover un-
earned premiums on account of a void policy, if there
has been fraud practiced in its procurement, the rule
is otherwise where the holder is innocent. If the risk
never be attached by reason of a mistake, free from any
evil practices, the insured is entitled to the return of
the whole premium, for none of it was earned."

It follows that plaintiff is not entitled to recover
if the false statement as to his occupation, made in
procuring the certificate, and warranted to be true, was
wilfully or intentionally made; and such, we think, is
the tenor and purport of the stipulation. That the
statement was false stands conceded; and that it was
not innocently or inadvertently made, but intentionally
and fraudulently, appears to be the only conclusion
which may properly be drawn from the facts of this
record. It is stipulated that in his written application
plaintiff agreed to be governed by the constitution and
laws of the society then in force or thereafter enacted.
The laws of the order then in force were therefore
called into and became a part of the contract, and
plaintiff must be regarded as having made this false
statement with full knowledge of the prohibited oc-
cupations; and he retained the certificate and continued
as an ostensible member of the society for nearly six
years, during all of which time he was charged with
knowledge of his ineligibility to membership. All of
the facts disclosed indicate a wilfull misstatement by
plaintiff as to his occupation, evidencing an actual intent
to defraud; indeed there is no suggestion of an unin-
tentional misstatement, as through mistake or inadver-
tence. And we conclude that the judgment in plaintiff's
favor cannot be upheld.

Respondent has not favored us with a brief, but has
filed, by leave, a memorandum citing the decision of
this court in Modern Woodmen v. Angle, 127 Mo. App.
94, 104 S. W. 29¼, which was a suit in equity by a
fraternal order seeking the cancellation of a benefit

certificate on the ground of fraud in its procurement. In that case the plaintiff society had tendered and paid into court the premiums paid by the defendant, but had not offered to pay interest thereon. It was held that plaintiff would be granted the relief prayed upon depositing in court the amount of the premiums with interest; and the court, through NORTONI, J., said: "It is certain that a court of equity will not cancel or divest property rights without requiring the adverse party to place the one whose right is cancelled or divested in *statu quo.*" This was merely an application of the rule that one who comes into a court of equity seeking to cancel a contract for fraud in its procurement must return the benefits received thereunder, or put the other party in *statu quo,* where this may be done, in keeping with the maxim that he who seeks equity must do equity. It is argued for respondent that appellant is here under the same obligation to return these premiums as it would have been had it brought an action in equity to cancel the certificate. In this, we think, the respondent is in error. Granting that had appellant come into a court of equity seeking affirmative equitable relief, in order to foreclose the question of liability on the certificate, it would have been compelled to return the premiums, it does not follow, we think, that this plaintiff has any standing in court to recover the same in this action. This distinction is recognized in Metropolitan Life Ins. Co. v. Freedman, 159 Mich. 114, 13 L. R. A. (N. S.) 298.

Where one submits to the cancellation of such a certificate, on the ground of fraud alleged to have been perpetrated by him in its procurement, and brings his suit to recover the premiums as for money had and received, the courts may properly deny him a recovery upon the ground that he will not be permitted to take advantage of his own fraud, if actual fraud appears. It is a trite doctrine that the action for money had and received is of equitable origin and character, and lies only where the defendant has received money belonging to the plaintiff which in equity and good

conscience ought to be restored to him. In a case of this character, where fraudulent practices appear on the part of the plaintiff in the procurement of his certificate—where he voluntarily parted with his money in an effort to defraud—it cannot be said that he is entitled, in equity and good conscience to the return thereof.

Plaintiff is not denied a recovery of the premiums for the reason that the certificate attempts to forfeit them (See Metropolitan Life Ins. Co. v. Freedman, supra), but on the ground that because of the false and fraudulent statement made in procuring the issuance of the certificate he will be held to have no standing in court to prosecute an action of this character.

The judgment will accordingly be reversed without remanding the cause. It is so ordered. *Reynolds, P. J.,* and *Becker, J.,* concur.