HENRI BOSSE, Respondent, v. KNIGHTS & LADIES OF SECURITY, Appellant.

St. Louis Court of Appeals. Opinion Filed April 6, 1920.

1. **INSURANCE:** Fraternal Beneficiary Associations: Insured Engaged in Prohibited Occupation: Waiver: Knowledge of Local Lodge Insufficient: Forfeiture. Where the by-laws of a fraternal bene-

ficiary association provided that no officer of the society or any local council, officer or member was authorized or permitted to waive any of the provisions of the by-laws of the society, and that no knowledge or information obtained by any subordinate council or officer should be held or construed to be knowledge or notice to the national council, even though the evidence shows that the local financier of the lodge who collected the dues knew that insured was working in a brewery for two years before he stopped collecting his dues, and there being nothing in the testimony from which it could be inferred that the national council or governing body had notice of such fact, such knowledge of the local financier of the lodge is not imputed to the governing body and did not constitute a waiver of the provisions of the contract.

2. ———: ———: ———: Forfeiture: Insured Not Entitled to Notice: Certificate Void. Though a fraternal beneficiary association acts at its peril in terminating a contract of insurance by refusing to accept dues tendered it by the insured and refusing to extend to him the benefits and pirvileges of the society without according him a trial, yet where the facts disclose, without question, that insured was engaged in a prohibited occupation, and the beneficiary certificate provided on its face that such would render the certificate void, insured was not entitled to notice and trial.

3. ———: ———: ———: ———: Certificate Void: Premiums Paid Recoverable in Absence of Fraud. Even though plaintiff was engaged in an occupation prohibited by the by-laws of a fraternal beneficiary association, at the time he made application for and was admitted as a member of the same, and the contract of insurance was void *ab initio*, and no risk attached, yet if the contract was wrongfully obtained by reason of insured's ignorance, inability to read or write, or a mistake or misunderstanding, and not from any evil practices on his part, he is entitled to the return of such premiums paid on the contract of insurance, but not so if the testimony discloses that such contract was obtained by reason of his fraud practiced in its procurement.

4. APPELLATE PRACTICE: Case Tried on Erroneous Theory: Remanded. In an action to recover dues and assessments paid to a fraternal beneficiary association, where the case was tried and submitted to the jury in the trial court on an erroneous theory and plaintiff obtained judgment, and the evidence shows that plaintiff may have a cause of action upon a corrected theory, the case will not be reversed outright, but will be remanded in order to permit amendment and retrial.

Appeal from the Cape Girardeau Court of Common Pleas.—*Hon. John A. Snider*, Judge.

REVERSED AND REMANDED.

*H. E. Alexander* and *M. A. Dempsey* for appellant.

(1) There was no case properly submissible to the jury upon (a) the pleadings or (b) the evidence. (2) Respondent "cannot blow hot and cold." Lord Kenyon, 4 T. R. 211. (3) Members of a fraternal beneficiary society are conclusively presumed to know its by-laws, and are bound by them. Benes v. Supreme Lodge K. & L. of H., 231 Ill. 134, 14 L. R. A. (N. S.) 540; Thompson on Corporations, section 941; Bacon, Benefit Societies (3 Ed.), 81; 2 May on Insurance, section 552; Niblock on Insurance, section 18; Bliss, Life Insurance, (2 Ed.), sec. 766; Lloyd v. Northern Woodmen, 113 Mo. App. 19; Hirsch v. Grand Lodge, etc., 56 Mo. App. 101. (4) The occupation of respondent was prohibited and *per se* invalidated his membership. Application, contract, by-laws; Dwight Case, 103 N. Y. 341; Bacon, Benefit Society and Life Insurance (Ed. 1894), sections 229, 326. (5) There was no estoppel by law or facts. Section 120A, by-laws; 16 Cyc. 680, 759; Iverson v. Life Insurance Company, 13 L. R. A. (N. S.), 866; Elliott v. Modern Maccabees, 13 L. R. A. (N. S.) 856. (6) The instructions were erroneous and highly prejudicial. (7) The verdict was excessive.

*Edw. D. Hays* and *David B. Hays* for respondent.

(1) The objections to plaintiff's pleadings, now offered by defendant should have been raised, if at all, by demurrer or timely motions of a proper nature, before trial. As this was not done the pleadings cannot now be challenged on such grounds. Secs. 1804, 2119, R. S. 1909; Clark v. Brotherhood of Locomotive Fireman, 99 Mo. App. 687, 694; Murphy v. Insurance Co., 70 Mo. App. 78, 81-83. The plea of estoppel was not inconsistent with plaintiff's petition, and the fact that equitable relief might have been asked does not affect plaintiff's

right to damages as prayed for. Defendant having wrongfully repudiated the contract of insurance, and having refused to accept premiums when due, plaintiff had a right to treat the contract as at an end, and recover the money he had paid under it with interest. Dickey v. Cov. Mut. Life Ass'n, 82 Mo. App. 372, 376-377; McKee v. Phoenix Ins. Co., 28 Mo. 383, 386; 29 Cyc. 92; 29 Cyc. 103. It is well settled in this State and elsewhere that it is competent for mutual benefit societies to waive a strict compliance with their by-laws. McMahon v. Maccabees, 151 Mo. 522, 542; St. Louis Police Relief Ass'n v. Tierney, 116 Mo. App. 447, 464; Zahm v. Royal Fraternal Union, 154 Mo. App. 70, 81-82; Andre v. Mod. Woodmen, 102 Mo. App. 377, 382; 29 Cyc. 193; Edmonds v. M. W. A!., 125 Mo. App. 214, 219. (3) It is a well-settled principle, in respect of mutual benefit societies, that they cannot expel a member, or deprive him of his rights in the society, without giving him notice and a full opportunity to be heard in defense of the charges against him; and, further, that in proceedings for his expulsion they must exercise their powers fairly and in good faith. State ex rel. Young v. Temperance Benevolent Association, 42 Mo. App. 485, 490; Mulroy v. Knights of Honor, 28 Mo. App. 463; Albers v. Merchants' Exchange, 39 Mo. App. 583. (4) The burden of proving that respondent was engaged in a prohibited occupation rests upon appellant. White v. U. S. Brothers and Sisters of Mys. Ten., 180 S. W. 406; Watkins v. Brotherhood of American Yeomen, 188 Mo. App. 626, 636; Burchard v. Western Com'l Travelers' Ass'n, 139 Mo. App. 606, 634; Gruwell v. Nat'l Council K and L. Security, 126 Mo. App. 496, 505; Adams v. Modern Woodmen of America, 145 Mo. App. 207, 210; Wolfe v. Supreme Lodge K. and L. of Honor, 160 Mo. 675, 687. (5) The admission of testimony relating to a fact about which there was no dispute, although possibly erroneous, will not justify a reversal, because it was harmless, since it could not mislead the jury. Procter v. Sutherland, 162 Mo. App. 641, 649;

Potter v. Conqueror Trust Co., 170 Mo. App. 108, 124; Weldon v. Omaha, K. C. & E. Ry. Co., 93 Mo. App. 668, 675, 676. And although a witness may express his opinion upon a matter of law, yet if it is substantially correct, and cannot prejudice the party complaining of it, judgment will not be reversed for this reason. Whittelsey v. Kellogg, 28 Mo. 404. (6) The instructions given by the court at the request of plaintiff were neither erroneous nor prejudicial. (7) The verdict was not excessive, but was based upon the true measure of damages in such cases. Dickey v. Mut. Life Association, 82 Mo. App. 372, 376.

NIPPER, C.—This is an action to recover dues and assessments paid to the defendant, a fraternal benefisiary society.

The petition alleges that in March, 1907, the respondent made application for and was admitted as a member of Cape Council No. 953, a lodge maintained by the order at Cape Girardeau, and a contract of insurance entered into, by which appellant agreed, upon payment by respondent of all dues and assessments, and compliance with all the rules and requirements of the order, to pay to certain beneficiaries named in the policy, at his death, the sum of $2,000; that respondent paid the dues and assessments, amounting to $2.30 per month, from March, 1907 to May, 1915; that in June, 1915, when he tendered payment to the financier of the local lodge, that officer refused to receive it, and thereupon terminated the contract and his connection with the lodge, without any notice to him or affording him any trial; and that by reason thereof, plaintiff has been damaged in the sum of the monthly payments together with interest.

The answer admitted that plaintiff made application for and was admitted to membership in said council, and a contract of insurance entered into, and that plaintiff was suspended from membership in said society; but denies liability because plaintiff was engaged in a pro-

hibited occupation, to-wit, in the manufacture of intoxicating liquors, which was prohibited by the by-laws of defendant, which were a part of the contract.

Plaintiff's reply was a general denial, with the further plea that if plaintiff had engaged in such prohibited occupation, such fact was in the knowledge of defendant, and that defendant is estopped, by reason of its waiver of such prohibited occupation, to deny the right of plaintiff to continue his membership in said order, and that defendant, after full knowledge of such occupation on the part of plaintiff, acquiesced therein and accepted from plaintiff such money as was necessary to continue his membership

Upon a trial in the court below, plaintiff recovered judgment for the sum of $291.45. From this judgment, defendant in due course prosecutes its appeal.

Plaintiff offered in evidence, the original certificate, which was attached to the petition. Plaintiff, testifying in his own behalf, stated on direct examination, that on the date the policy was issued to him, he was employed in a brewery at Cape Girardeau, and continued in the employment of the brewery and was so employed in the month of June, 1915, when the officers of the local lodge refused to accept further dues from him; that Mr. Kassel, who was an officer of the local lodge, and whose business it was to collect said dues, and to whom he had been paying his dues all the time, refused to receive his money in June, 1915. He stated that he did most of the cooper work, consisting of repairing barrels and kegs around the brewery; that this did not take all of his time, and that while not so employed he helped the brewmaster by working in the wash house or in the bottle shop, or wherever he was told to work in the brewery; that such was his occupation at the time he became a member, and was at the time defendant refused to accept his money.

He stated further, that at the time he made his application, he told the person who took the application,

he sometimes assisted the brewmaster. He stated that he told Kassel two years before he quit paying dues, that he helped the brewmaster, and that Kassel told him that he should pay no more money, but that he (Kassel) continued to take his money for two years thereafter, and never gave him any notice or served him with any papers notifying him that he was engaged in a prohibited occupation.

On cross-examination, he said that he worked around the vats in the brewery and the wash house where they fermented beer, during the times he was not engaged as a cooper, and that he was doing that at the time he made his application for membership in the lodge; that a Mr. Juden took his application, and that Dr. Dalton was the examining physician.

With reference to his answers to Juden and Dr. Dalton at the time he applied for membership, the following questions and answers were made:

Q. "Did you tell Mr. Juden or Dr. Dalton that you were assisting in the fermentation of the hops and working in the vat house? A. Yes, I told him I do copper work and some else work.

Q. "What else work? A. Around the wash house.

Q. "Did you tell them you assisted the Brewmaster? A. I don't remember if I did. . . .

Q. "And if you didn't tell them that, you forgot it, you don't remember whether you told them that or not? A. No, I don't remember no more."

Further in his cross-examination, he stated that up until the time he told Kassel he was helping the brewmaster, which was about two years prior to 1915, none of the officers of the local council knew he was working in the brewery.

It was shown by the testimony of witnesses Zimmer and Koeck, who testified for plaintiff, that he worked in the brewery about one-third of his time, doing such

work as he was directed to do in connection with the manufacture of beer.

At the close of plaintiff's case, defendant offered an instruction in the nature of a demurrer, which was by the court overruled.

Defendant then offered in evidence, section 107 of the by-laws of the society, which existed in 1907 and was in existence in June, 1915, which section prohibited any of its members "in the capacity of proprietors, agents or servants" engaging "in the manufacture or sale, either wholesale or retail of malt, spirituous, fermented, vinous or any intoxicating liquors to be used as a beverage."

Dr. Dalton, testifying for defendant, stated that he never held any office in the "National Council;" that he examined the plaintiff at the time he applied for membership in the order, and put down the answers just as plaintiff gave them to him, in response to questions he would ask plaintiff.

Fred H. Kassel, another witness, stated that he had known plaintiff for about seven years; that he was elected financier of the local council in 1910, and that the plaintiff told him the first time in June, 1915, that he was working for the brewery, and after he received this information he refused to receive any more dues.

T. J. Juden, another witness, stated that he was President of the Local Council of the Knights & Ladies of Security in 1907; that he had never learned that plaintiff was engaged in a prohibited occupation until May or June, 1915, and on the day he learned of this fact, he gave the "National Council" notice.

Defendant also introduced in evidence, section 120-A of the by-laws of said order or society, which provided, among other things, that no officer of the society, or any local council officer or member, was authorized or permitted to waive any of the provisions of the by-laws of the society, and that no knowledge or information obtained by any subordinate council or officer should be held or construed to be knowledge or notice to the

"National Council."

At the close of all the evidence, defendant again offered an instruction in the nature of a demurrer, which was by the court overruled. The case was submitted to the jury and resulted in the verdict and judgment as aforesaid.

Appellant assigns as error:

First: The failure of the court to sustain its demurrer.

Second: The failure of the court to sustain a motion for new trial on the ground that the verdict was against the evidence and the weight thereof, and against the law as set out in the instructions.

Third: Error in the giving of instructions.

Respondent meets this contention with the suggestion that the defendant had wrongfully terminated the contract of insurance by refusing to accept the dues tendered it by plaintiff, and refusing to extend to him the benefits and privileges of the society, without according him a trial; that defendant was estopped from denying this liability because it had accepted dues after knowledge that plaintiff was engaged in a prohibited occupation.

## I.

There is no testimony in this record from which it may even be inferred that the "National Council" of the defendant had any knowledge that plaintiff was engaged in a prohibited occupation, as provided by the by-laws of the society.

As was said in Davis v. Knights & Ladies of Security, 196 Mo. App. 485, l. c. 489 and 490, 196 S. W. 97:

"The power of such an agent, whose duty is simple and ministerial—a sort of dumb waiter in receiving and transmitting the money—to waive the provisions of the by-laws enacted by the governing body or whose uncommunicated knowledge is imputed to the governing body and becomes the basis of an estoppel to enforce such by-laws, is a very different proposition  That the financial

collector of the subordinate lodge or "council" is not an agent of the grand lodge or "National Council" with such extensive powers, where the by-laws forming part of the insurance contract provide, as is the case here, that no member or officer of the local lodge has power to waive the provisions of the contract, has been ruled in this State many times." [Sec. 22, Acts 1911, page 292; Hartman v. Knights & Ladies of Security, 190 Mo. App. 92, 175 S. W. 212; Thompson v. M. B. A., 189 Mo. App. 15, 176 S. W. 506; Gilmore v. M. B. A., 186 Mo. App. 445, 171 S. W. 629.]

Even though plaintiff's testimony be true, that he told the local financier of the lodge two years prior to 1915, that he was working in the brewery, yet there is nothing in the testimony from which it could be inferred that the "National Council," or governing body had notice of such fact.

## II.

It is alleged in the petition, that plaintiff was given no notice and was therefore wrongfully deprived of his rights and benefits under the contract of insurance. Defendant, in taking this action, did so perhaps at its peril. However, where the facts disclose, without any question, that plaintiff was engaged in a prohibited occupation, and the beneficiary certificate provided on its face, that such would render the certificate void, it cannot be said that he was entitled to notice, because to so hold would be to say that plaintiff was entitled to notice and a trial, when the conceded facts in this record show that it would be the defendant's duty, under its by-laws, to do the very thing it has done if a trial had been granted. [State ex rel. v. Martin, 195 Mo. App. 366, l. c. 370, 191 S. W. 1064.]

## III.

Yet, where the evidence discloses, as it does in this case, that plaintiff was engaged in an occupation prohibited by the by-laws of the society, at the time he made

application for and was admitted as a member of the same, the contract of insurance was void *ab initio,* and no risk attached. Under such circumstances, where the plaintiff, as here, seeks to recover premiums paid under the terms of a void contract, he cannot do so if the testimony discloses that such contract was obtained by reason of his fraud practiced in its procurement. But if the contract was wrongfully obtained by reason of plaintiff's ignorance, inability to read or write, or a mistake or misunderstanding, and not from any evil practices on his part, he is entitled to the return of the premiums paid on such contract of insurance, in an action brought by him for such a recovery (unless barred by the Statute of Limitations), but not the amount of assessments or dues paid to the local lodge and used by it solely for the purpose of maintaining its social features. [2 May On Insurance (4 Ed.), sec. 567; Vining v. Franklin Fire Insurance Company, 89 Mo. App. 311; Hellman v. K. & L. of S., 198 Mo. App. 308, 200 S. W. 698; Metropolitan Life Insurance Company v. Freedman, 159 Mich. 114.]

The case was tried and submitted to the jury, in the court below, upon an entirely erroneous theory. However, in order to promote substantial justice, we think the case should not be reversed outright, but that it should be remanded, in order to permit plaintiff, if he so desires, to amend his petition, that the case may be retried in accordance with the views expressed in this opinion.

Therefore, the Commissioner recommends that the judgment of the trial court be reversed and the cause remanded.

PER CURIAM:—The foregoing opinion of NIPPER, C., is adopted as the opinion of the court. The judgment of the circuit court is accordingly reversed and the cause remanded.

*Reynolds, P. J., Allen* and *Becker, JJ.,* concur.